# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ROBIN HATFIELD,

        Plaintiff,

                                  **Case No. 2:17-cv-76**

        v.                          **Chief Judge Edmund A. Sargus, Jr.**

                                  **Chief Magistrate Judge Elizabeth P. Deavers**

NANCY BERRYHILL,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Robin Hatfield, who is proceeding without the assistance of counsel, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 15) ("SOE"), the Commissioner's Memorandum in Opposition (ECF No. 21) ("Opposition"), and the administrative record (ECF No. 9). No reply has been filed. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff filed her application for benefits on June 14, 2013, alleging that she has been disabled since January 1, 2001, due to mental problems, neuropathy, and weight problems. (R. at 81–92, 167–72.) Plaintiff's application was denied initially and upon reconsideration. (R. at 81–108.) Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative

Law Judge Rita S. Eppler ("ALJ") held a hearing on May 21, 2015, at which Plaintiff, represented by counsel (Gregory Klima), appeared and testified.  (R. at 2–35.)[1]  Carl Hartung, a vocational expert, also appeared and testified at the hearing.  (R. at 29–35.)  On September 14, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 60–76.)  On January 7, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 51–54.)  Plaintiff then timely commenced the instant action.

## II.    HEARING TESTIMONY[2]

### A.    Plaintiff's Testimony

Plaintiff testified at the administrative hearing that she was born on June 10, 1974.  (R. at 9.)  She is 5'7" tall and weighs 360 pounds.  (R. at 11.)  Plaintiff is not married, but has a boyfriend.  (*Id.*)  She has one child who is twenty-three or twenty-four years old.  (R. at 9–10.)

Plaintiff completed ninth grade and took special education classes in school.  (R. at 9, 13.)  Plaintiff testified that her reading skills are "[n]ot good."  (R. at 12.)  However, she is able to follow instructions on a package to cook an item.  (*Id.*)

Plaintiff does not currently have a driver's license, but had one in the past.  (R. at 11.)  She has two friends who take her places and one of them brought her to the administrative hearing.  (R. at 11–12.)

Plaintiff testified that she started drinking at age seventeen until approximately age twenty-six or twenty-seven.  (R. at 14–15.)  Plaintiff admitted that she "used to be a bad

---

[1] Plaintiff also attended a hearing on March 19, 2015, at which time the administrative law judge continued the hearing so that the records could be updated and so that her counsel, Mr. Klima, could enter an appearance.  (R. 37–50.)

[2] The Undersigned limits the analysis of the evidence and the administrative decision to the issues apparently raised in the SOE.

alcoholic" and would drink between five and eight forty-ounce drinks a day. (R. at 13–14.) She was convicted three times for drinking and driving. (R. at 15–16.) She also acquired an extensive misdemeanor record while drinking, including domestic violence, drug abuse, and attempted theft. (R. at 27.) She last drank a wine cooler about three months ago. (R. at 13.)

Plaintiff receives food stamps and has a medical card. (R. at 16.) Plaintiff takes prescribed medication and testified that she becomes depressed if she does not take her medicine. (R. at 17.)

Plaintiff testified that she can stand and walk for five or ten minutes before she needs to sit down and take a break. (R. at 18.) Plaintiff can sit all day without a problem as long as she can sometimes stand up and rub her legs in grain alcohol. (R. at 18–19.) Plaintiff can lift between ten and fifteen pounds. (R. at 19.)

Plaintiff could not recall when she last worked, but remembered that her last job was as a janitor with Goodwill Industries. (*Id*.) She worked there for six months or less. (R. at 19–20.)

Plaintiff currently receives mental health treatment. (R. at 20.) She has been receiving such treatment for the last four or five years since she had a nervous breakdown. (*Id*.) She testified that she has been hospitalized two or three times for mental health issues. (*Id*.)

Plaintiff described a typical day. (R. at 21–22.) She would get out of bed no later than 11:00 a.m., get her medicine, and walk with her cane into the kitchen. (R. at 21.) She would prepare breakfast, such as an egg and fried bologna. (*Id*.) After she eats, she goes to her lazy boy chair and elevates her legs, and watches a little bit of television. (*Id*.) She also colors. (R. at 21–22.) Usually, a friend visits her in the afternoon. (R. at 22.) Sometimes she becomes hungry and eats a cold-cut sandwich and then takes her medicine. (*Id*.) Sometimes she takes a bath and sometimes her friend assists her into the bath tub. (*Id*.) After her bath, Plaintiff returns

3

to her chair.  (*Id*.)  A friend usually makes a dinner for her, which she reheats later.  (*Id*.)

Plaintiff is learning to sew.  (*Id*.)  Her friends from church take her to church services once or

twice a month.  (R. at 23.)  She goes to the park twice a week if it is nice outside.  (R. at 24.)  She

goes to bed around 9:00 or 10:00 p.m.  (*Id*.)

Plaintiff does perform household chores, including cleaning her bathroom, grocery

shopping, and sometimes doing the dishes.  (R. at 22–23.)  A friend does her laundry.  (R. at 23.)

A person from church assists with sweeping, dusting, mopping, and vacuuming.  (*Id*.)

Plaintiff uses a cane.  (R. at 24.)  She believed that "Hathaway" prescribed the four-poster

cane approximately one and a half to two years ago.  (R. at 24–25, 27.)  She has consistently

used a cane since a total right knee replacement in May of 2014.  (R. at 25.)  Plaintiff complains

of numbness and pain in her knees.  (R. at 26–28.)  Her left knee presently bothers her the most

and there is constant pain.  (R. at 28–29.)  Plaintiff sees Dr. Hatheway once a month to receive

steroid shots in her knees.  (R. at 29.)

**B.**     **Vocational Expert Testimony**

Carl Hartung testified as a vocational expert ("VE") at the May 21, 2015, administrative

hearing.  (R. at 29–35.)  The VE testified that Plaintiff had not engaged in any work that reaches

the level of substantial gainful activity.  (R. at 31–32.)  The ALJ proposed a hypothetical that

presumed an individual with Plaintiff's age, education, and no work experience, having the

ability to lift twenty pounds occasionally, ten pounds frequently, can sit approximately six or

more hours in an eight-hour day, can stand and walk combined for a total of four hours in an

eight-hour day, can occasionally climb stairs, stoop, kneel, crouch and crawl, and can frequently

balance and is precluded from performing work that requires ladders, ropes or scaffoldings, and

can understand, remember and follow simple, routine type of tasks, is limited to only superficial

interaction with supervisors, coworkers and occasional interaction with the public, and is limited to low stress work defined as no strict production quotas or time pressures. (R. at 31.) The VE testified that the hypothetical individual could perform work as an eyeglass frame polisher, document preparer, inspector, pari-mutuel ticket checker, all of which were unskilled, sedentary positions and all of which were available nationally and regionally. (R. at 31–34.)

The ALJ next asked the VE to presume the same individual as before with mental limitations to permit understanding, remembering, and following simple, routine tasks, concentration, persistence and pace is not limited for those same type of simple, repetitive tasks and interaction is limited superficial for both supervisors, coworkers, as well as the public, and the same limitations for stress in the workplace, no strict production quotas or time pressures. (R. at 34.) The VE testified that these limitations would not impact the hypothetical individual's ability to perform the sedentary work previously identified. (*Id.*) The ALJ asked the VE whether this individual can perform past work or any other work if the ALJ finds Plaintiff's testimony to be credible and supported by the medical evidence. (*Id.*) The VE testified that with the restrictions and limitations Plaintiff identified, specifically elevating her lower extremities, pain in her lower extremities, as well as anxiety and depression, he would not be able to identify jobs that would tolerate such limitations and restrictions in the workplace. (R. at 34–35.)

### III.  MEDICAL RECORDS[3]

#### A.  J. Mark Hatheway, M.D.

Plaintiff presented to J. Mark Hatheway, M.D. for evaluation of knee problems on March 25, 2014. (R. at 617–18, 932–33.) Dr. Hatheway opined that Plaintiff "is severely disabled

---

[3] For the sake of brevity, the Undersigned provides a brief outline of the medical history and will discuss additional record evidence as necessary to address Plaintiff's contentions of error within the Analysis Section.

because of the pain, stiffness and crepitation in the knees" and that she "is severely disabled and has severe osteoarthritis of both knees." (R. at 617, 932.) He discussed the risks of a total right knee replacement, but Plaintiff wanted to proceed with the procedure. (R. at 617–18, 932–33.)

On May 7, 2014, Dr. Hatheway performed a total right knee replacement. (R. at 625–27.) Following the surgery, Dr. Hatheway reported that the right knee "excellent overall alignment" and "excellent stability throughout a complete range of motion of the knee[.]" (R. at 626.) Plaintiff tolerated the procedure well. (*Id*.)

On February 26, 2015, Plaintiff presented to Dr. Hatheway for follow up of her knee problems. (R. at 624.) Plaintiff reported that "she is pleased with the results" of replacement surgery on her right knee and Dr. Hatheway noted that the right knee healed nicely and that she had full extension and flexion to 135 degrees. (*Id*.) He also noted that her right knee continues to do well. (*Id*.) Dr. Hatheway reported that x-rays of Plaintiff's left knee were taken and that she has medial and patellofemoral arthritic changes in her left knee. (*Id*.) Dr. Hatheway reported that he was scheduling Plaintiff for left total knee replacement in the near future. (*Id*.)

**B.      James C. Tanley, PhD.**

On January 5, 2014,[4] Plaintiff presented to consultative examiner James C. Tanley, PhD. upon referral by the Ohio Division of Disability Determination for psychological evaluation relating to her claim for mental disability benefits. (R. at 608–13.) Plaintiff reported that she is seeing a psychiatrist and that she has gone to North Central Mental Health for two years. (R. at 608.) Plaintiff reported that she is bipolar, does not like to be around people, and likes to stay inside in the dark. (*Id*.) Plaintiff stated that she was voluntarily psychiatrically hospitalized for

---

[4] The ALJ and Commissioner mistakenly refer to an examination date in June 2014. (R. 72; Opposition at 2).

about a week before her mother was murdered.  (R. at 609.)  She takes psychoactive medication, which helps her.  (*Id.*)

Plaintiff stated that her childhood was not that good because her mother was physically abusive; her parents divorced when she was thirteen or fourteen years old; and she watched her father die.  (*Id.*)  Plaintiff reported that she is divorced and lives alone and does not know where her daughter and half-brother are.  (*Id.*)  Plaintiff went as far as the ninth or tenth grade in SLD (special learning disability) classes.  (*Id.*) Her grades were "bad" and she left school when she became pregnant.  (*Id.*)

Dr. Tanley noted that Plaintiff is morbidly obese (5'7" tall, weighing 350 pounds), generally cooperative and demonstrating no eccentricities of manner, impulsivity, or compulsivity.  (R. at 610.)  Her grooming, posture, and general motor behavior were unremarkable.  (*Id.*)  Dr. Tanley noted that Plaintiff's velocity and volume of speech were adequate and that her thoughts were coherent, relevant, and goal-oriented.  (*Id.*)  He observed no articulation errors, reduced intelligibility, or other notable speech anomalies.  (*Id.*)  Although the records he reviewed indicated a diagnosis of Psychotic Depressive Disorder, Dr. Tanley reported that Plaintiff did not endorse any psychotic symptomology during the appointment.  (*Id.*)  Upon questioning, Plaintiff gave no evidence of preoccupations, religiosity, misinterpretations, suspiciousness, hostility, aggressivity, ideas of reference, delusions, paranoid ideation, hallucinations, thoughts of alien control, grandiosity, omnipotence, or any unusual thought content.  (*Id.*)  Dr. Tanley reported that her affect was appropriate to thought content, but her eye contact was variable.  (*Id.*)  While she cried during the examination, Plaintiff did not report any suicidal/homicidal ideation.  (*Id.*)  Her psychomotor activity was unremarkable and there were no allegations of guilty, hopelessness, helplessness, or worthlessness.  (*Id.*)  Dr. Tanley reported

that Plaintiff alleged anhedonia with mood problems, but without inflated self-esteem or grandiosity. (*Id*.) Dr. Tanley also reported no motor or autonomic manifestations and that she did not evidence apprehension, vigilance, scanning, fear, or sense of impending doom. (*Id*.)

Plaintiff was alert and oriented times four during the examination. (*Id*.) Dr. Tanley opined that her recent and remote memory were superficial to poor. (*Id*.) He estimated that her current level of intellectual functioning to be in the extremely low range and that is what would be expected in the work setting. (R. at 610, 612.) However, Dr. Tanley opined that her ability to maintain attention and concentration, persistence and pace was unimpaired during the interview portion of the consultative examination. (R. at 612.) Plaintiff had no difficulty understanding the task requirement of the examination and responded appropriately and in a timely fashion to his questions. (*Id*.) Dr. Tanley opined that she would be expected to show increasing and significant difficulties with tasks of increasing complexity and multistep tasks. (*Id*.) He further opined that if her psychological problems were to worsen, they would negatively impact this area. (*Id*.) According to Dr. Tanley, Plaintiff would be at serious risk for trying to deal with the social aspects of work and to deal with workplace pressure. (*Id*.)

## C.   Elizabeth Martinelli, PA-C

On March 3, 2015, Elizabeth Martinelli, PA-C, reported that Plaintiff has "severe osteoarthritis of her knees which renders her disabled." (R. at 629, 917.)

## IV.   ADMINISTRATIVE DECISION

On September 14, 2015, the ALJ issued her decision. (R. at 60–76.) At step one of the

sequential evaluation process,[5] the ALJ found that Plaintiff had not engaged in substantially gainful activity since her application date of June 14, 2013. (R. at 62.) The ALJ concluded that Plaintiff had the severe impairments of morbid obesity, status post right knee replacement in May 2014 secondary to osteoarthritis of the knee, neuropathy, degenerative disc disease, and depressive disorder. (*Id*.) He found that the consultative examiner, Dr. Tanley, estimated Plaintiff's current level of intellectual functioning to be in the extremely low range, but no testing was done to confirm this. (R. at 63.) The ALJ noted that Dr. Tanley diagnosed with probable intellectual disability, moderate.

(*Id*.)

The ALJ next concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.) The ALJ indicated that she had specifically considered Listings 1.02A, 1.04, 11.14, and 12.00. (R. at 63–66.)

At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

---

[5]Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> After careful consideration of the entire record, it is found that the claimant has the residual functional capacity to perform light work as defined in 20 CFR § 416.967(b) as the ability to lift twenty pounds occasionally and ten pounds frequently, sit approximately six hours in an eight hour day; stand/walk for a total of four hours in an eight hour day.  She can occasionally climb stairs, stoop, kneel, crouch and crawl; frequently balance; and is precluded from using ladders, ropes and scaffolding in the workplace.  She is capable of understanding, remembering and following simple routine tasks; interaction with supervisors, coworkers and the public should be occasional and limited to superficial; and work should be limited to no strict production quotas or time pressures.

(R. at 66.)  In reaching this determination, the ALJ assigned "some weight" to Dr. Tanley's opinions, concluding that the overall evidence does not support more severe limitations.  (R. at 72.)  The ALJ rejected Dr. Hatheway's March 2014 statement that Plaintiff was "'severely disabled' because of pain, stiffness and crepitation in the knees" and Ms. Martinelli's opinion dated March 3, 2015, that Plaintiff had severe osteoarthritis of the knees that rendered her disabled, concluding that the treatment notes did not support these opinions.  (R. at 72–73.)

Relying on the VE's testimony, the ALJ determined that Plaintiff can perform jobs that exist in significant numbers in the national economy.  (R. at 75–76.)  She therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 76.)

## V.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   ANALYSIS

Plaintiff, who is proceeding without the assistance of counsel, appears to assert contentions of error based on her legal representation and dissatisfaction with the type of work the VE identified Plaintiff capable of performing. (SOE at PAGEID ## 1025–27.) Plaintiff also apparently contends that the ALJ did not properly weigh the opinion evidence. (SOE at PAGEID ## 1025–45.) Finally, Plaintiff appears to assert that her subjective complaints warrant remand. (*Id.*) The Undersigned considers each contention of error in turn and finds each to be without merit.

**A.      Plaintiff's Prior Legal Representation and Additional Medical Records**

Plaintiff contends that her former counsel, Ronald Plymale, "dropped the ball" and "did not file all of the paper work for my case" and, in a letter provided by Plaintiff, Mr. Plymale states that Plaintiff "would have been better represented by someone who regularly did Social Security work[.]"  (SOE at PAGEID ## 1025–27.)  Neither Mr. Plymale's alleged inadequacies nor the alleged failure to supplement the record are grounds for remand.  Sentence six of 42 U.S.C. § 405(g) provides in relevant part as follows:

> The Court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42. U.S.C. § 405(g).  "Sentence-six remands may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency."  *Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) (citations omitted).  The requirements that the evidence be "new" and "material," and that "good cause" be shown for the failure to present the evidence to the ALJ have been defined by the United States Court of Appeals for the Sixth Circuit as follows:

> "For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' . . .  Such evidence is 'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.' . . .  A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ . . . .  [T]he burden of showing that a remand is appropriate is on the claimant."

*Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).

In the instant case, while Mr. Plymale was appointed as Plaintiff's attorney in March 2015 (R. at 166), Plaintiff's more recent counsel, Gregory Klima, undertook her representation sometime before the hearing on March 19, 2015. (R. at 6, 42–43.) While Plaintiff appeared without counsel at this hearing, she advised that she had secured new counsel, Mr. Klima. (R. at 42–43.)[6] The ALJ instructed Plaintiff at the hearing on March 19, 2015, that her new attorney should advise if he thinks there is a need for additional records. (R. at 46, 48–49.) Mr. Klima appeared and represented Plaintiff at the hearing on May 21, 2015. (R. at 2–7.) The ALJ again provided Mr. Klima another opportunity to present any additional relevant records and Mr. Klima agreed that he would communicate with the Court about such records. (R. at 7.) Based on this record where Plaintiff was represented by Mr. Klima prior to the hearings, Plaintiff has not shown that Mr. Plymale's alleged inadequacies or alleged mistakes had any bearing on her case.

Plaintiff also attaches copies of medical records to her SOE, apparently constituting the records that she believes that Mr. Plymale should have included in the administrative record. As a preliminary matter, at least some of those records are already contained in the administrative record. (*Compare* SOE at PAGEID ## 1033, 1044–45, with R. at 624, 629–30, 917.) To the extent that the remaining three pages of what appear to be medical records may not already be included in the administrative record (SOE at PAGEID ## 1029, 1036, 1043), Plaintiff has not shown, or even argued, that these records are new or were otherwise unavailable to her prior to the hearing on May 21, 2015, or at any time to supplement the administrative record.[7] Moreover,

---

[6] Plaintiff mistakenly referred to her new counsel as "Ron Klima." (*Id.*)
[7] The first record is an intake record from North Central Mental Health Services regarding a service date of February 17, 2012, which predates the relevant period that began in June 2013, when Plaintiff protectively filed for SSI. (SOE at PAGEID # 1029.) The second record is a handwritten note dated June 14, 2014, from the Ohio Health Center and signed by Ms. Martinelli

although Plaintiff failed to argue materiality, review of the additional evidence she attached to her SOE reveals that she could not have shown a "reasonable probability" that the Secretary would have reached a different conclusion on the issue of disability if presented with the additional evidence. *See Ferguson*, 628 F.3d at 276. As previously noted, one of the records pre-dates the relevant period and another record simply identifies dates for surgery and appointments. (SOE at PAGEID ##1029, 1043.) The remaining record opines that Plaintiff has significant difficulty climbing stairs (*id*. at PAGEID # 1036), but as discussed below, a similar record from Ms. Marinelli is part of the administrative record and the ALJ appropriately accounted for such difficulty by limiting Plaintiff to occasionally climbing stairs. (R. at 66.)

Finally, as set forth above, Mr. Klima represented Plaintiff during the hearing on May 21, 2015, and was given an opportunity to supplement the administrative record. To the extent that Mr. Klima may not have submitted certain records that Plaintiff believed material, "there is absolutely no statutory or decisional authority . . . that the alleged incompetence of [claimant's] first attorney constitutes 'good cause'" for a sentence six remand. *Taylor v. Comm'r of Soc. Sec*., 43 F. App'x 941, 943 (6th Cir. 2002); *see also Firth v. Comm'r of Soc. Sec*., No. 2:16-cv-14165, 2017 WL 4169632, at *8 (E.D. Mich. July 27, 2017), *adopted by* 2017 WL 4163684 (E.D. Mich. Sept. 20, 2017) (stating that the claimant "may not now capitalize on his counsel's past failure to supplement the record"); *McClimans v. Comm'r of Soc. Sec*., No. 4:14-cv-2751, 2016 WL 1031110, at *11 (N.D. Ohio Mar. 15, 2016) ("[A]ny implication that Plaintiff's failure to obtain the medical source statements prior to the hearing was due to attorney incompetence

---

or by Ralph W. Newman, D.O., opining that Plaintiff has "significant difficulty climbing stairs due to her bilateral knee degenerative joint disease and neuropathy." (PAGEID # 1036.) The last record is an undated page of handwritten notes reflecting that Plaintiff has pre-testing scheduled, surgery scheduled for May 13, 2015, and a follow-up appointment scheduled for May 28, 2015. (PAGEID # 1043.)

has no bearing on the good cause requirement."); *Hardwick v. Colvin*, 3:13-cv-125, 2014 WL 1092178, at *11 (E.D. Tenn. Mar. 18, 2014) (stating that where the claimant was represented by counsel who appeared at the administrative hearing, "[c]ounsel could have assisted Plaintiff in submitting this information to the ALJ. Accordingly, remand pursuant to sentence six of 42 U.S.C. § 405(g) is not warranted").

For all of these reasons, it is **RECOMMENDED** that any contention of error based on Mr. Plymale's alleged inadequacies or alleged failure to supplement the record be **OVERRULED**.

## B.    Plaintiff's Objection to the Type of Work Identified By the VE

Plaintiff next appears to challenge the ALJ's decision because the work the VE identified her as capable of performing "depresses me, a lot." (SOE at PAGEID # 1025.) However, as the Commissioner points out (Opposition at 6), absent a showing that Plaintiff is unable to perform the work identified by the VE, her objection to this work will not serve as a basis for remand. *See* 20 C.F.R. § 416.966(c)(8) ("We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of . . . [y]ou do not wish to do a particular type of work."); *see also Whitsett v. Comm'r of Soc. Sec.*, No. 16–0813, 2017 WL 1362023, at *6 (D. N.J. Apr. 10, 2017) ("[A] claimant will not be found disabled due to lack of motivation or lack of interest in working or performing a particular job."); *Durgin v. Astrue*, No. 07-0063, 2008 WL 4181162, at *12 (N.D. Iowa May 8, 2008) ("Social Security benefits are not awarded for individuals who are unemployed because they do not wish to work."). Accordingly, it is **RECOMMENDED** that any contention of error based on Plaintiff's objection to the type of work identified by the VE be **OVERRULED**.

**C.      ALJ's Consideration of the Medical Opinion Evidence**

Plaintiff also appears to challenge the ALJ's assessment of the opinions of Dr. Tanley, Dr. Hatheway, Ms. Martinelli, and "Dr. Dan Bridger, PhD."  (SOE at PAGEID ## 1025–26.)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(c).  The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ."  20 C.F.R. § 416.927(c)(2);  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion

> with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will

consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

## 1. Dr. Tanley

The ALJ considered the opinion of Dr. Tanley, a consultative examiner, and assigned it "some weight[,]" reasoning as follows:

> The claimant participated in a consultative examination in June 2014 with James C. Tanley, PhD. (Exhibit 5F). She reported that she was in pain and that she had a bipolar disorder. She does not like to be around people, likes to stay in and keep it dark. (Exhibit 5F/1). She reported attending a local mental health center and was being treated for depression. (Exhibit 5F/ 4). She made variable eye contact and was tearful, noting a sleep and appetite disturbance with mood problems and anhedonia. She takes medications that are helpful. (Exhibit 5F/4). She had no difficulty understanding the task requirements of the consultative examination. Her intellect was estimated to be in the extremely low range and that is what would be expected in the work setting. Maintaining concentration, pace or persistence was unimpaired. She responded appropriately and in a timely fashion to all of the examiner's questions. She would be expected to show increasing and significant difficulties with tasks of increasing complexity and multistep tasks and if her psychological problems worsened, they would negatively impact this area. She would be at serious risk for trying to deal with the social aspects of work as well as dealing with workplace pressures at that time. (Exhibit 5F/5). Some limitations have been included, which are consistent with the opinion of Dr. Tanley, and his opinion is given some weight though the overall evidence does not support more severe limitations.

(R. at 72.)

The ALJ therefore provided good reasons for according partial weight to Dr. Tanley's opinion and reasonably concluded that the severity of the assessed limitations is not supported by overall evidence from the record. *See* 20 C.F.R. § 404.1527(c)(3) (identifying "supportability" as a relevant consideration). For example, Dr. Tanley noted that Plaintiff appeared tearful during the examination and that she reported that she would shut her door and not talk to people, opining that Plaintiff "would be at serious risk for trying to deal with the social aspects of work

at this time." (R. at 612.) However, the record also reflects that Plaintiff admitted to Dr. Tanley, and she conceded on other occasions, that she attends church, interacts with friends, and has a boyfriend. (R. at 11–12, 22–23, 205, 609, 897.) The ALJ therefore imposed a limitation of occasional and limited to superficial interaction with supervisors, coworkers, and the public. (R. at 66.)

In addition, Dr. Tanley opined that Plaintiff "could" be at "serious risk for dealing with workplace pressure at this time" because she is "significantly depressed[.]" (R. at 612.) However, Dr. Tanley also opined that Plaintiff's ability to maintain attention and concentration, persistence and pace was unimpaired during the interview portion of the consultative examination (*id*.) and other portions of the record similarly reflect mild or no difficulties in this regard. (R. at 208, 857, 897).

Dr. Tanley opined that Plaintiff would show "increasing and significant difficulties with tasks of increasing complexity and multistep tasks" (R. at 612), and the ALJ incorporated this restriction by limiting Plaintiff to simple routine tasks with no strict production quotas or time pressures. (R. at 66.)

In short, the ALJ did not err in her consideration and weighing of Dr. Tanley's opinion.

### 2. Dr. Hatheway and Ms. Martinelli

Plaintiff apparently challenges the ALJ's rejection of Dr. Hatheway's opinion that she is "severely disabled" and Ms. Martinelli's opinion that Plaintiff is "disabled." (SOE at PAGEID # 1026; R. at 72–73.) Plaintiff's position is without merit. As a preliminary matter, the Commissioner reserves the power to decide certain issues, such as whether a claimant is disabled and unable to work. SSR 96–5p, 1996 WL 374183, at *5 (1996) ("Medical sources often offer opinions about whether an individual . . . is 'disabled' or 'unable to work[.]' . . . Because these

are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner."); 20 C.F.R. § 416.927(d)(1) (providing that a medical source's opinion that a claimant is disabled and unable to work is a matter "reserved to the Commissioner" that is not entitled to "any special significance"); *see also Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016) ("The ALJ reasonably gave no weight to Dr. Dhar's opinion because her conclusion that Cosma is totally disabled is a determination reserved to the Commissioner[.]").

The ALJ also noted that the overall evidence did not support these opinions. (R. at 72–73.) For example, the ALJ noted that Dr. Hatheway's treatment notes reflect that following her right knee replacement surgery, Plaintiff was pleased with the results and wanted a left knee replacement; that she had full extension and flexion of 135 degrees on her right leg; and that her right knee continued to do well. (R. at 73.) The ALJ also observed that other treatment notes do not support Dr. Hatheway's opinion that she is disabled. (*Id.*)

The ALJ, however, accounted for Dr. Hatheway's recommendation that Plaintiff would need a first floor apartment because she would have significant difficulty climbing stairs by limiting Plaintiff to occasionally climbing stairs. (R. at 66, 635.)

For these reasons, the ALJ did not err in her consideration and weighing of Dr. Hatheway's and Ms. Martinelli's opinion that Plaintiff is disabled.

### 3. "Dr. Dan Bridger, PhD."

Finally, Plaintiff complains that "no body tried to contact Dr. Dan Bridger, PhD. He is a Psychiatrist [who] said I am unstable and emotional." (SOE at PAGEID # 1026.) Plaintiff, however, did not attach any records from this provider and it is not clear from her SOE who this source is. Moreover, as previously explained, to the extent Plaintiff believes that certain

evidence should have been included in the administrative record, her counsel, Mr. Klima, had

ample opportunity to do so and his alleged failure to include certain records, including any

records purportedly from Dr. Bridger, does not serve as a basis for remand.  *See*, *e.g.*, *Taylor*, 43

F. App'x at 943; *McClimans*, 2016 WL 1031110, at *11.

Accordingly, the ALJ did not err in her failure to consider any opinion from Dr. Bridger.

**D.      Evaluation of Subjective Complaints**

Finally, Plaintiff appears to challenge the ALJ's consideration of her subjective

complaints.  (SOE at PAGEID ## 1025–26.)  The Undersigned finds this contention of error to

lack merit.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility

assessment:

> Where the symptoms and not the underlying condition form the basis of the
> disability claim, a two-part analysis is used in evaluating complaints of disabling
> pain.  20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.
> 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994).  First, the ALJ
> will ask whether the there is an underlying medically determinable physical
> impairment that could reasonably be expected to produce the claimant's
> symptoms.  20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an
> impairment exists, then he must evaluate the intensity, persistence, and limiting
> effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he

[or she] had the opportunity to observe the witness's demeanor."  *Infantado v. Astrue*, 263 F.

App'x 469, 475 (6th Cir. 2008) (citing *Walters v.  Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th

Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining

to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew,

resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)).  This

deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir.1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996); *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted). The Sixth Circuit has held that "even if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains

to support it." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)).

Here, the ALJ concluded that the limiting effects of Plaintiff's symptoms were not credible to the extent that they were inconsistent with the medical evidence:

> After careful consideration of the evidence, it is found that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they not consistent with the objective medical evidence and other evidence. (*See* 20 CFR § 404.1529(c)(4)). This includes her positive response to the surgery for her knee and her otherwise conservative treatment for her other physical issues which basically consisted of medications and recommendations for weight loss. Mental health treatment has also been conservative. Despite this conservative treatment, she was shown to have normal gait and intact strength sensation. She was alert, oriented with intact attention and concentration. Non-compliance with treatment is also noted in that she did not attend physical therapy, frequently left against medical advice, did not take her psychotropic medications as prescribed and frequently missed appointments with her providers. Despite all of this, she remained able to perform many of her daily activities such as shopping, watching movies, reading, preparing meals, doing arts and crafts and attending to her personal needs. The undersigned did not include limits due to cane use as the record does not contain the prescription for a cane as testified to by the claimant. Further, she reported walking for exercise and a successful surgery. Throughout the record, physical examinations showed intact strength. The record does not support the need for use of an assistive device.

(R. at 74.)

The Undersigned finds that the ALJ's detailed discussion amply supplies substantial evidence supporting her credibility finding and that she properly considered the requisite factors in assessing Plaintiff's allegations of limiting effects of her symptoms. For example, the ALJ included a lengthy and thorough discussion of the record evidence, including the objective medical findings. *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms). The ALJ also reasonably considered that Plaintiff required and received only conservative treatment and that at times she

missed appointments and did not comply with treatment recommendations. *See* SSR 96–7p, 1996 WL 374186 (July 2, 1996) (in assessing credibility, the adjudicator must consider, among other factors, "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" and "[t]reatment, other than medication, the individual receives or has received"); 20 C.F.R. § 404.1529(c)(3) (same); *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x, 719, 727 (6th Cir. 2013) (minimal or lack of treatment is valid reason to discount severity); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 931 (6th Cir. 2007) ("The ALJ properly considered as relevant the fact that [the claimant's] medical records did not indicate that [claimant] received significant treatment . . . during the relevant time period."); *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (discounting the claimant's allegations where he failed to follow prescribed treatment); *cf. Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was receiving conservative treatment). The ALJ also reasonably considered the record evidence reflecting Plaintiff's activities of daily living. *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain.").

In sum, the Undersigned finds that the ALJ's assessment of Plaintiff's credibility was based on consideration of the entire record and is supported by substantial evidence. Accordingly, applying the applicable deferential standard of review, the Court concludes that the ALJ's credibility determination was not erroneous. It is therefore **RECOMMENDED** that

Plaintiff's contention of error based on the ALJ's consideration of her subjective complaints be **OVERRULED**.

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED**, and the Commissioner of Social Security's decision be **AFFIRMED**.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d

981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: January 22, 2018                       *s/ Elizabeth A. Preston Deavers*
                                               ELIZABETH A. PRESTON DEAVERS
                                               UNITED STATES MAGISTRATE JUDGE